Kirk Kunkle, Stephanie Kunkle, Karen Goins and Remax United, excuse me, Remax Unlimited. On behalf of the Avalon, Mr. Thomas W. Gooch, on behalf of the Avalines, Sarah Goins and Remax, Sarah E. Johnson, and on behalf of the Kunkles, Mr. Andrew J. Mertzenich. Good morning, Mr. Gooch. Mr. Gooch. Good morning, Robert. Did you do the real estate closing, by any chance? I'm sorry, sir? Did you do the real estate closing on behalf of your clients? Oh, no. No. No. Count four of the complaint was directed against the fellow who did the real estate closing. I see. I would have found out what that letter of awareness was before the closing started. I can assure you of that. Which brings us to a point. Can there be a cause of action for fraud or for nondisclosure when a plaintiff has actual knowledge of the fact that was not disclosed? And that's really the key point of this case, I think. But here, paragraph 16 of the contract requires them to furnish a deed subject only to CC&Rs and taxes and that sort of thing. In the complaint, you did not cite the precise paragraphs of the contract. I'm sorry, sir? You did not cite the precise paragraphs of the real estate contract in the complaint? No. No, we did not. But here you're doing it in oral argument. We alleged it. We alleged that there was a duty to disclose prior to the – and the real thrust of the matter is, was there a duty to disclose before they signed the contract? I mean, your average real estate buyer doesn't go and check titles before he makes an offer to buy the real estate. So, you know, the fact that it didn't come out until the closing, to me, is really moot because the concealment occurred before the contract was even executed. The Kunkels signed that, what they call a letter of awareness. I never heard that term before. I've never done real estate work. But I do know it's an unusual term, but it had to have some significance because it was recorded, and they had to have known it was going to be recorded. And certainly they and the real estate broker had a duty to disclose that fact because, in fact, we'll never know because it wasn't disclosed. But you would think that young homebuyers would not have offered to purchase property knowing that a two-way highway was about to be turned into what, in essence, was a parkway. Are there any allegations that the sellers or the broker made any false, incorrect, or misleading statements about the widening of the parkway? Not at all. They said absolutely nothing about it. But concealment is just as bad. How can there be concealment if it's in the documents because the lawyer didn't discover it? There was no way for the buyer to know that that document existed prior to the time of the title commitment. Unless you place a duty on every buyer to go and check title before they even make an offer on a piece of property they would submit to you, that doesn't happen. Well, they had it before the closing, right? Yes, sir. They had it before the closing, correct? They had it when they got the title commitment their attorney had. Which was before the closing? Yes, sir. But it was post-contract. So what do you do at the closing? Do you try to kill the deal? Now, the seller has their earnest money. Presumably they don't have a place to live. They bought a new home. So they come to the closing. And for the first time, perhaps, if the attorney had disclosed it properly, they would have known about it. However, the complaint alleges that he didn't pay any attention to it. That's not before you because that part of the lawsuit is still pending. But it's still in the complaint. Well, that's where it belongs, isn't it? Because your clients, through their lawyer, had actual knowledge. I think that suing a lawyer, and I do a lot of that, is the last-ditch attempt that's straightened to relieve a client of damages. I think that the primary responsibility rested with the sellers of that real estate who were well aware of that letter and should have disclosed it before the contract was signed. And I think it is an absolute disgrace that they would keep something like that a secret and walk people into signing a contract, giving earnest money, going through all the steps of buying a house, including selling their own, and then be confronted at closing when they really had no choice even had they known about it at closing. What is your legal support for that argument? Judge, Justice, we cited a number of cases on fraudulent concealment to you in our brief. And the cases run that when you have knowledge of material facts and you keep it to yourself, it's no different than fraudulent concealment. Why is it a material fact? Because it affected the value, according to the allegations of the complaint, taken as true. It affected the value of the real estate. Yeah, but so does O'Hare Field. So does what? I'm sorry. O'Hare Field. O'Hare. It would be kind of hard. I remember it as O'Hare Field also. It would be pretty hard to ignore the obvious where O'Hare Field was concerned. Well, I spent a lot of time in DuPage County, and you'd be amazed at the number of lawsuits and litigation arising out of the belief that it was a nuisance. And it was a nuisance for decades before the plaintiffs filed suit. And it was one of those things where it was you bought a house within the flight paths of the airplanes, and now you're claiming it's a nuisance. And there are certain aspects of public improvements, like roads, sewers, and so on, that I'm not sure are deemed material unless they encroach upon the property. Was this a situation where when they enlarged the road from two to four lanes that some of the parcel was taken? No. No. But the increase from two lanes to four lanes, with the attendant effect of that, affected the value of the real estate. It would be hard to analogize that the situation at O'Hare was the same as something like this. Because all somebody had to do in visiting the house was keep their ears open around O'Hare Field, assuming that the flight paths were correct at the time. There was no reason for them to think there was going to be any entitlement or any attempt to increase the size of that road. But they had to—and I guess what I'm not getting across is they had the right to know, and there was no way for them to have learned that prior to signing that contract. Well, what do you mean there's no way to learn that? They knew it at the time of the closing. They knew there was a letter of awareness that should have put them on notice had their lawyer showed it to them, but it was too late by then. It's not too late. You say it's too late, and it is too late to avoid any consequences, but it's not too late to just nix the deal. I mean, they could have just said, hey, we're not buying it, if that's the case, and walk away from it. And maybe they would have gotten their money back. Well, maybe, but we don't know that. Maybe they would have found another place to sleep that night. But they should have had to. They should not have had to have been put through that. They should have been told before they signed the contract. By the way, we signed a document years ago putting us on notice that this is going to be a much bigger road or highway out in front of the property. We think you should know about that. That's the correct way of doing things. Does the defendant's actual knowledge of the information required to be disclosed render any reliance on the plaintiff's silence unreasonable? I think it's unreasonable not to have disclosed that information prior to signing the contract. Otherwise, what would be the point of having the document? I mean, they created the statement, or the city created that document and recorded it so everybody would know. But you can't require a buyer of real estate, rather, to go and check title prior to signing a contract. Was it paragraph 23 of the contract you claim was a breach? I believe paragraph 16 of the contract was a breach. With respect to that, is a block citation in the complaint to the entire contract as opposed to specific paragraphs sufficient? I'm sorry, sir? You did not? Is a block citation or just a blanket reference to the contract sufficient? There was a blanket reference. The contract was attached to the complaint. But not the specific paragraphs were not? Of 16, no. The entire contract was referred to in the complaint. But it is very clear that paragraph 16 is violated. I'm sorry, Justice. No, I'm sorry for interrupting. I should have let you finish. Go ahead. We're both sorry. There was a lesson in paragraph 16 that was breached in the contract. It was violated in 20, I believe. Yeah, in 20, paragraph 16. Normally under fraud, there's a duty to disclose. And the duty to disclose is usually based upon a law, case law, statutory, whatever. A breach of contract, on the other hand, is based upon a breach of the terms of the agreement between the parties. So unless the contract provides that there has to be disclosure of such possible implosions of traffic, how is this a breach of an agreement between parties as opposed to a duty which is recognized in the law as being required to be explained or given notice of? I believe paragraph 16 of the complaint requires the seller to deliver a deed subject only to permitted exceptions that are enumerated in paragraph 16. But that letter of awareness is not one of those permitted exceptions. Now, at the time the seller signed the contract, they knew they could not deliver a deed at closing. My recollection is this abstract principle of law that says that upon the execution and delivery and acceptance of a deed, that all the claim defects in the contract are merged into the deed. And if you are going to accept the deed, I thought it meant that you basically were waiving those things which supposedly you knew about. Well, the point is, is that if you knew about it and the breach is that there's an exception that you felt shouldn't have been in the title report, then how can you claim that after accepting the deed, you now can go back and say you breached it because there is this exception which supposedly merges into the execution of the deed. And it's a principle of real estate law that seems to find the face of your argument. I have heard of the doctrine of merger. And I've heard how provisions of the contract merge into the deed. But it seems to me that that provision then, that the deed is subject only to CC&Rs and taxes and liens, is part of that deed. And it can't be in this case because they concealed it. How could it be concealed if paragraph 16 iterates that there shall be no exceptions and this is an exception which you claim is a breach? It almost seems like a circumlocution where you start with a premise and by the time you end up at the end, you come up with the exact opposite conclusion of the first premise. Well, I hope I'm not that far off. Maybe you're not. Maybe it was the third or the fourth. There's a principle that a party may not close his or her eyes to the available information while entering into a transaction and then charge the other party with deception. How does that principle apply to this case? Because it's a concealment as opposed to a misstatement of a majority. It's a concealment, though, active and active. An act, not a passive thing. When they decided to market that real estate, having signed that letter and make no mention of it to any prospective buyer, they began the process of concealing that situation because I believe and we have alleged they knew it would cause a significant value to that real estate. They didn't even tell the truth about where they were moving or why they were moving. I mean, that's no way to behave, and I think that does rise to the level of a concealment. It was material, and then it caused a diminution in value to the real estate. If we were to accept that argument that the party entering a contract can close his or her eyes to available information and that's actually included in the documents, we'd open the door to all kinds of different disputes where the sellers would have to always disclose their motives for moving, where they're going to move it. I don't understand it. Then why did you make that argument? Because I think it supports the rest of my argument. I think every case turns on a particular tax, but when a seller has gone so far as to sign that document knowing full well it's going to be recorded, they have a duty to tell the truth or say nothing at all. A real estate broker had a duty to disclose. Well, they didn't say anything. They didn't say anything. You just agreed to that. They made no false, incorrect, or misleading statements. They said they were moving because they needed a different size house as opposed to because they were going to be a superhighway building rather than their existing house. I mean, these people were involved in a homeowners association. That broker specialized, as we allege, in that subdivision. They all knew about it. They all knew that letter existed. And you come back to it was readily available. What buyer goes and checks title before they sign a contract, before they supply a house? Before the closing, they do. When the title commitment was issued to their attorney, their attorney knew that there was a letter of awareness. Now, you can impute his knowledge to them and say he should have found out what it was. We're required to impute that knowledge to them. Well, yeah. That's why he's an offender. Okay, but that's a circuitous argument. Again, we come right back to that point again. We're talking about post-contract and pre-contract. And my position is they have a duty to disclose pre-contract. Thank you. Thanks. You'll have time for rebuttal. Ms. Johnson. Good morning. May it please the Court. My name is Sarah Johnson, and I represent Karen Goings and Unlimited Northwest, doing business at RE-MAX Unlimited Northwest. This matter obviously arises out of the Cosentino's purchase of real property in Algonquin from sellers Kurt Kunkel and Stephanie Kunkel. Karen Goings and Unlimited Northwest acted as the sellers' real estate brokers in the subject transaction. The Cosentinos filed a complaint in which they attempted to state cause of actions for breach of contract and fraud against the sellers and attempted to state a cause of action for fraud against the sellers' real estate brokers, which is Goings and Unlimited Northwest. The gravamen of each cause of action is an alleged failure to disclose the planned expansion of Long Meadow Parkway, a roadway abutting the property, prior to the closing on the Cosentinos' purchase of the property. What was their duty? Under the law, real estate brokers have a duty to disclose information of which they have actual knowledge, that is, material facts of which they have actual knowledge. So what was their duty here? As one of the points in my brief, the Cosentinos failed to allege any facts from which it can be inferred that Goings or Unlimited Northwest knew about the expansion. Moreover, as you've pointed out, it's unclear how material a road expanding next to this property even is in this scenario. Real estate brokers typically do not do title searches. That's not part of the services that they provide under the law. That's what a lawyer does. Was the allegation that the brokers knew of the letter? Is that what was alleged in the complaint? There was a conclusory allegation, but I don't want to get too lost on duty and intent because there are several elements to the fraud, one of which is reasonable reliance. That's a separate element from any duty or intent. Reasonable reliance is its own element, so regardless of any duty or intent, the buyer's reliance, the Cosentinos' reliance on Goings and Unlimited Northwest's silence must be reasonable. That's the reason why Goings and Unlimited Northwest respectfully requested this court affirm the circuit court's dismissal of the Cosentinos' complaint. The circuit court's dismissal was proper for the following reasons. A, the Cosentinos had actual notice of the expansion through their title complaint. B, the Cosentinos failed to allege facts from which it was inferred that Goings or Unlimited Northwest knew about the expansion. And C, the Cosentinos are charged with knowledge of the expansion as it's a matter of public record. This argument today will focus predominantly on A and C, or the first and third points from Goings and Unlimited Northwest's brief. First, the circuit court properly dismissed count three for fraud against Goings and Unlimited Northwest because the Cosentinos had actual knowledge of the expansion. Therefore, any reliance on silence by Goings and Unlimited Northwest was not reasonable. In causes of action for fraud, plaintiff's reliance has to be reasonable, and that's separate and apart from any duty or intent. The court must take into account the facts of which plaintiffs had actual knowledge as well as those they could have discovered if they used ordinary prudence. In their brief, the Cosentinos make many disjointed arguments, including that reasonable rhymes is an issue of fact, several puzzling references to duty and intent by Goings and Unlimited Northwest. However, what the Cosentinos are really asking this court to do is to ignore their actual notice of the road expansion, as that's the only way they can prevail in this appeal. Illinois law does not allow the court to ignore this notice, and thus this dismissal should be affirmed. The Cosentinos' attorney makes large of the fact that this wasn't disclosed before they signed their contract or their offer. However, that's precisely what the attorney review period is for under Illinois law, is for them to go and discover information about the property, which was done here and put them on notice of the expansion. Situations like this are commonplace in the industry. Correct, and they absolutely would have had options once they discovered this. They always have options before they close. His argument is that those options apparently were impractical. So what's your answer to that? People back out of real estate deals all the time, and they fight over the earnest money and people won't give it up or won't give it back. It's a common occurrence. It happens a lot. I'm involved in a lot of those cases personally, so it happens. Was this an escrow closing? I believe there was some money in escrow. I don't believe it was very much money, but there was some, yes. And plaintiffs also want us to ignore the fact that their lawyer's knowledge, the Cosentino's lawyer wants us to ignore the fact that knowledge to their lawyer is knowledge to them. As in the Cuska case I cited, a principal is deemed to have knowledge of all facts of which his agent receives notice. Mr. Bush does not dispute that principle. Once again, the Cosentino's continually refer to some alleged fact as to goings or unlimiteds of duty or intent. However, duty and intent have no bearing on whether the Cosentino's reliance is reasonable, as reasonable reliance is a separate element from intent and duty. And thus, fact issues as to duty or intent are irrelevant as to this inquiry. Next, the circuit court properly dismissed count three for fraud against goings and unlimited Northwest because the Cosentino's are charged with knowledge of the expansion as it is public record. Therefore, once again, the Cosentino's cannot rely on silence by goings and unlimited Northwest. Parties are not entitled to rely upon representations of law because both parties are presumed equally capable of knowing and interpreting the law. Likewise, misrepresentations of public record are not actionable. Does McHenry County have a plan that relates to the development of streets, roads, and highways in McHenry County? I'm not sure if this is actually in McHenry County or Kane County. I'm sorry, Kane County. You can look them up. Moreover, the letter of awareness attached to the Cosentino's complaint was recorded with the Kane County Recorder's Office. And as such, it's unquestionably a matter of public record. All one would have to do would be take the address or the PIN and look up the documents on title to this property, and you would find the letter of awareness. And in fact, that's what happened here. The attorney ordered a title commitment, and this document appeared on the public record. In that way, it's similar to the cases cited in our brief, such as Randall's, where a village ordinance requiring property owners to hook up property to a sewage system by a certain date was a matter of public record. And not similar to the other cases cited by the Cosentino's where it's not readily apparent from the public record the condition at issue. So for the foregoing reasons, Karen Goings and Unlimited Northwest respectfully request that this court affirm the dismissal of the Cosentino's complaint. Thank you. Mr. Mertzfinich. Mr. Mertzfinich. Just call me Mr. Mertzfinich, yes. Okay. Good morning, Your Honors. May it please the Court. My name is Andrew J. Mertzfinich of the Prime Law Group. I represent the defendants, Kurt and Stephanie Kunkel on this matter. I would just like to open and say it should be noted that the decision of the trial court wasn't based on case law. It was based upon the record before it, specifically affirmative matters that were brought to the Court's attention. And of those, there are two reasons why this Court should affirm the dismissal of the complaint. The first was that the letter of awareness that forms the corpus of the complaint was a public document recorded in a public office and easily accessible to anyone who wanted to see it. Especially those who would have a vested interest in the property, it would be easily found. But the second reason, and I believe the stronger reason, is that the existence of that letter of awareness, which would have brought to the attention of the plaintiffs, any type of fraud or misrepresentation, even if it existed, was disclosed in Schedule B of the title commitment. And the motion dismissed was supported by affidavits, which spoke to the validity of Schedule B and the recording of the letter of awareness. The fact of recording and the validity of Schedule B has not been in dispute. Furthermore, a court can rely upon the affidavit showing that this was a validly recorded document, that the Schedule B was genuine, and that the court did rely on that when making that decision. In the present matter, the trial court stated that they found the plaintiffs were on notice of the existence of the letter of awareness, which would have told them about the proposed road work on the street next to their property, because Schedule B specifically indicated that letter of awareness. And plaintiffs do not dispute this. Yet, plaintiffs argue that because they did not have actual knowledge of the information contained in the letter of awareness, and that this lack of knowledge, therefore, should form the basis of a cause of action for fraud and misrepresentation. Counsel? Yes. I think the last sentence that Mr. Gooch said before he sat down was that the duty to disclose was prior to the execution of the contract. Did you hear him say that? I do not recall that specifically, Your Honor, but even if it was said that the duty to disclose falls before, was it closing, Your Honor, I'm sorry? Before execution of the contract. I thought he said before the execution of the contract. Of the original sale contract. Yes. So, apparently, if one has a duty to disclose before one enters into the contract, does that then mean that failure to disclose before you enter is a prefatory breach of contract? An anticipatory breach? I would disagree. Or is it a fraudulent act based upon the fact that you should have disclosed before you entered into the contract? I would disagree for the breach of contract specifically, Your Honor, because you can't breach a contract that hasn't been formed yet. That, on that one. If you have a duty to disclose based upon a contract before you've entered into the contract. To me, that doesn't make sense, Your Honor, because if you don't have, it would be a breach of a separate agreement. If you had an agreement to disclose, then that would be that breach of that particular agreement. But to have a duty to disclose prior to the actual creation of the contract and then claiming a breach of that contract, that argument does not make sense to me, Your Honor. Did your clients make false statements regarding their intentions for moving or why they were moving? I cannot speak to that one, Your Honor. Well, there's an allegation, right? There is an allegation, Your Honor. Is that relevant? I would disagree, Your Honor. The facts that the property was for sale, the reasons for selling it, even if the reason was to we want to get a mansion, that doesn't matter. The sale price of the house would not be affected by how my clients decided to move to or from a new house. What if the reason had actually been, rather than we want a smaller house, what if the reason had been we have a leaky basement? Well, that would be, that changes the facts, Your Honor. It does. And if you look at the leaky basement, that would be a material thing. That affects the value of the home, but moving to a different place. It affects the value of the home, right? Right, but moving to a different house. Right. What if putting in the parkway next door affects the value of the home? Well, then we're back again, Your Honor, to the fact that the possibility of the work was disclosed. Whether or not my clients knew about that is, again, we're talking about the public record. That's been the... Well, they knew about it, right? I cannot speak to that one. Well, they submitted a letter, right? Yeah, the letter of awareness. I don't have it in front of me. I don't believe the letter of awareness said on August 15, 2019, we're going to start ripping out properties. I don't think that said it. But it did say that Longmeadow Parkway would be expanded from a two-lane to, I believe, a four-lane with a turn lane, if I remember correctly. So, yes, it could affect the value, Your Honor. But, again, we're looking at the reasonable reliance on a concealment, which, as fellow defense counsel pointed out, is that concealment, you have to have a reasonable reliance. I would argue, Your Honor, is that we don't have to spoon-feed everything, and that if there is any duty to disclose, that that person was met by disclosing the title commitment. That's why we give title commitments. That's the purpose of that period of time between the contract and the closing. As my colleague in the defense counsel would say, yes. And, Your Honor, I would like to also bring another reason that dismissal was appropriate is because the plaintiffs, by their pleadings and the record before the court on the motion to dismiss, do not show that reasonable reliance. And addressing, in our brief, we brought up 2619, 2615, the attacks on the pleadings and such, we've cited City of South Algeria, E-Waste, Management of Illinois, Incorporated, which laid out the principles towards what specificity you need in order to state a complaint. And the complaint alleges many facts that, for purposes of this, that we won't go into, but the pleadings did not specifically give any active measures that the Counsels took to conceal this. Granted, negligence is not a defense to fraudulent misrepresentation, but what active concealment was there when, even if the complaint's taken as true, Schedule B was disclosed? So, with that, Your Honors, we believe that there's no statement of a cause of action under 2615. Under 2619, dismissal was appropriate. And as such, we would ask that you affirm the order of the trial court. I'd be happy to take any other questions, because I do not believe my time is up. Well, there was an allegation there was reliance, wasn't there? Correct, but with the reasonable reliance. Yeah, but as soon as you start arguing about reasonable reliance, are you not now weighing the evidence? Well, the trial court is allowed to weigh the record that's before it, as long as it's supported by affidavit and the motion. You can use those when relying on that to come to your ruling. Did you file a motion for summary judgment? In our brief, we argue, Your Honor, that the substance of a motion may be what governs it, not necessarily its label. So with summary judgment, that's judgment as a matter of law. If I may finish, just let me know, Your Honor. With the summary judgment, it's the fact that no facts can lead to judgment in favor of the plaintiff. Isn't reasonable reliance, though, by its essence, isn't that a fact question? Whether it was reasonable. It could be a question of fact, Your Honor, but when you can look at the facts against summary judgment, there's no reasonable jury would find in that regard, that there is no question of fact. Did I misunderstand you when you said, as you were leaving the podium, that the defendants had a duty to disclose pre-contract? I believe they did. Here's what I base that on. When that letter of awareness was created, the village of Algonquin thought it was serious enough, where they required the developer to display that letter of awareness to each and every purchaser of any of those lots that abutted what was going to be a major arterial road, what was described as developing into a major arterial road. I had some dental work. I'm having trouble adjusting to it. Now, if they had that duty, why wouldn't every seller have that duty? Well, let's talk about it. And it's very specific. It was pre-contract they had to disclose that. Once again, you're getting into duty, their intentions. Let's talk about the argument that there was not reasonable reliance here. Again, we have to differentiate between pre-contract and post-contract. It's no question the lawyer had a duty to show them that letter prior to closing. But you know what the argument was made? Once that happens, they have lots of options. They can sue for the earnest money. They can sue for this. They can sue for that. That's not an option to take people and force them into litigation. None of it would have happened had they disclosed that letter prior to contract. Because every purchaser of an original lot of that subdivision had the right to receive by the very terms of it. How long did they live there before this cause of action was brought? Couples signed that letter, I believe, in 1990. My clients, as soon as they filed it, you're talking about my clients rather than them. As soon as they found out about the development, they came to see me. And within a reasonable period of time, I filed suit. I can't tell you exactly when. I want to say they were there for less than a year. When was the purchase of the home? I'm sorry, sir. The contract was signed on? By age, provisional activity, and facts, and memory. Well, it was finalized on October 30th of 2014, so it had to be filed. We filed suit in 2018. So four years later. Four years later within the statute. As I recall, they were in to see me within a year of filing suit. It's not unusual for consumers to delay taking a step, getting involved in litigation. And I think they had no idea, even when they found out about it, how bad it was going to be. I do know immediately after construction began, they were in to see me. It's for brokers. A broker has to have some responsibility other than just showing somebody a house to earn that kind of money, particularly as we allege in the contract. She knew about it, too. I mean, why wouldn't you want a prospective buyer to know about something like that? We're not in the business of having that door to the extent it used to be. I mean, those standards have been relaxed for a long time. Why wouldn't you want to reveal those kind of facts? Why would you want to put it right on the listing sheet? You agreed earlier that the lawyer's knowledge is imputed, too. Yeah, no question about that. No question about that. But, again, you're concentrating on post-contract, and I'm concentrating on pre-contract. There is no breach until there is a contract. Can there be an anticipatory breach? No. No, but then we come back to fraud. It was fraudulent to conceal that fact. You acknowledged that there were no intentional or no affirmative steps taken to conceal. You agreed. It was simply by silence. By silence. Silence enough to amount to fraud and concealment? Yes, Roger, yes. When you have knowledge of a material fact, and I consider that to be when it affects the value of the real estate, as we allegedly complain and which they have to accept as true for a 615 and 619 motion, then absolutely. And we should have had the right to proceed to prove our allegations factually. And I think we could have, but we still can't. Thank you, sir. Anything else? No, sir. Thank you, Mr. Bruce. The court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course. The court statement recess.